IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH P.A., <br><br> Plaintiff, <br><br> vs. <br><br> CBE GROUP, INC., d/b/a CREDIT BUREAU ENTERPRISES, INC., <br><br> Defendant. | No. C03-2080 <br><br> **ORDER** |

## I.  INTRODUCTION

This matter comes before the court pursuant to plaintiff National Union Fire Insurance Company of Pittsburgh P.A.'s ("National Union") September 12, 2005 motion for summary judgment (docket no. 24) and defendant CBE Group, Inc. d/b/a Credit Bureau Enterprises, Inc.'s ("CBE") September 15, 2005 motion for summary judgment and resistance to National Union's motion for summary judgment (docket no. 25).  Oral argument was held the parties motions on March 7, 2006, at which National Union was represented by Jason O'Rourke and CBE was represented by John Walker, Jr.

## II.  PROCEDURAL HISTORY

On December 17, 2003, National Union filed a complaint for declaratory judgment. In the complaint, National Union seeks a declaration that it has no duty to insure or indemnify CBE pursuant to a Miscellaneous Professional Liability insurance policy ("the Policy").  Specifically, National Union requests the court declare:

> (1) the Policy does not provide coverage for any claim for damages resulting from a specific lawsuit;

1

(2) National Union is not required to provide a defense to CBE in the specific lawsuit;

(3) National Union is not required to indemnify CBE for any damages incurred as a result of the specific lawsuit; and

(4) National Union is entitled to any other relief that the Court deems just and appropriate under the circumstances.

CBE denies National Union is entitled to a declaratory judgment.

On September 12, 2005, National Union filed a motion for summary judgment. National Union asserts CBE never provided notice of a specific lawsuit, and, therefore, National Union has no duty to provide coverage for liabilities resulting from the lawsuit. On September 15, 2005, CBE filed a motion for summary judgment and resistance to National Union's motion for summary judgment. CBE asserts that it is entitled to coverage under the Policy as a matter of law because it provided timely notice of the lawsuit. On October 6, 2005, National Union filed a resistance to CBE's motion for summary judgment.

### III. UNDISPUTED MATERIAL FACTS

National Union issued the Policy, numbered 873-13-73, to CBE. National Union sold the Policy through an insurance agent, Pederson, Dowie, Clabby, & McCausland, Inc. ("PDCM"). The Policy is an errors and omissions policy. The "Errors and Omissions" paragraph provides:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any claim or claims first made against the Insured and reported to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act first occurs on or after December 1, 1995 and prior to the end of the Policy Period and solely in the conduct of the Insured's Profession. . . .

2

The Policy is a claims-made insurance policy. The Policy provides limited retroactive coverage for claims arising after December 1, 1995. The "Special Provisions" section of the Policy provides, in pertinent part:

> 2. Deductible
>
> The Company shall only be liable for those Damages, defense costs, charges and expenses which are in excess of [$10,000 for each Wrongful Act]. This deductible shall apply to each Wrongful Act and shall be borne by the Insured and remain uninsured. Claims arising out of the same act or out of a series of interrelated acts shall be considered as arising out of one Wrongful Act.

That is, the Policy provides that CBE is not insured for any claims for an amount less than $10,000. The "Special Provisions" section further states:

> 3. Loss Provision
>
> The Insured shall, as a condition precedent to the availability of the rights provided under this policy, give written notice to the Company as soon as practicable of any claim made against the Insured. Notice given by or on behalf of the Insured to any authorized representative of the Company, with particulars sufficient to identify the Insured, shall be deemed notice to the Company.

The policy period commenced on April 11, 2001 and ended on April 11, 2002.

On March 12, 2002, Judith Vega ("Vega") filed a class-action complaint against CBE in the United States District Court for the Eastern District of New York. In the complaint, Vega alleged that on or about October 8, 2001, CBE violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. CBE was served the Vega lawsuit on March 18, 2002.

CBE contacted PDCM to discuss the Vega lawsuit. In turn, Deb Dugan ("Dugan"), an employee of PDCM, contacted National Union by sending an email to Christopher Sharp ("Sharp"), Complex Claim Director at American International Group, Inc., the parent corporation of National Union. The March 21, 2002 email to Sharp stated:

3

> I spoke with you a few weeks ago regarding our mutual insured, Credit Bureau Enterprises. At that time I was asking you for a name of a law firm that is approved for your product line. Our insured has now asked for a firm in Louisville, KY & New York as they have been notified of a suit in both of those cities. However, they are planning on handling these without putting you on notice but only have 20 days to answer. Any recommendations? Please advise ASAP!
>
> Thank you for your assistance in this matter.
>
> Deb Dugan

The next morning, March 22, 2002, Sharp replied to Dugan in an email wherein he wrote:

> Deb,
>
> Louisville, KY
>
> Conliffe, Sandmann, Sullivan, PLLC
> 325 West Main Street
> Louisville, KY 40202
> 502-587-7711
> Contact person: Mr. I. G. Spencer
>
> New York, NY
>
> Ahmuty, Demers, McManus
> 123 William Street
> New York, NY 10038
> 212-513-7788
> Contact person: Robert Shaw
>
> D'Amato & Lynch
> 70 Pine Street
> New York, NY 10270
> 212-269-0927
> Contact person: George D'Amato
>
> Regards,
> Chris

Until June 6, 2002, these two emails constituted the only notice provided to National Union about the Vega lawsuit.

On June 6, 2002, PDCM filed a formal Notice of Occurrence/Claim regarding the Vega lawsuit with National Union, on behalf of CBE. National Union denied CBE's claim for coverage for the Vega lawsuit because it concluded CBE did not provide notice of the Vega lawsuit during the policy period, which ended on April 11, 2002.

## IV. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Woods v. Daimler Chrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). An issue of fact is "genuine" if it has a real basis in the record, Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." Woods, 409 F.3d at 990 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material when it is a fact "'that might affect the outcome of the suit under the governing law. . . .'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson, 477 U.S. at 248). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus., 475 U.S. at 587-88. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. Id. at 587.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel, 953 F.2d at 394 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.

The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## V. ANALYSIS

Under Iowa law, "[t]he construction and interpretation of insurance policies is a question of law for the courts." Johnson v. Farm Bureau Mut. Ins. Co., 533 N.W.2d 203, 206 (Iowa 1995) (citing Essex Ins. Co. v. Fieldhouse, Inc., 506 N.W.2d 772, 775 (Iowa 1993)).[1] Moreover, "'where the facts are not in dispute, and the inferences are certain, the question of whether timely notice was given is a question of law for the court[.]'" Met-Coil Sys. Corp. v. Columbia Cas. Co., 524 N.W.2d 650, 656 (Iowa 1994) (punctuation omitted) (quoting Estate of Linderholm v. State Auto & Cas. Underwriters, 169 N.W.2d 561, 564 (Iowa 1969)).

"The controlling consideration in interpreting insurance policies is the intent of the parties." Interstate Power Co. v. Ins. Co. of N. Am., 603 N.W.2d 751, 754 (Iowa 1999). If the language of the insurance policy is unambiguous, courts must examine the policy language to determine the intent of the parties. Id. If, however, the policy language is ambiguous, the Supreme Court of Iowa instructs:

> We interpret ambiguous policy provisions in favor of the insured because insurance policies are in the nature of adhesion contracts. In addition, when an insurer has affirmatively expressed coverage through broad promises, it assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms. Also, we interpret a policy from the viewpoint of an ordinary person, not a specialist or an expert. So when words in a policy are not defined, we will not give such words a technical meaning. Rather, we will give undefined words their ordinary meaning, one that a reasonable person would understand them to mean.

---

[1] Federal courts are bound by the substantive law of the forum state in diversity actions. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). The parties do not dispute Iowa law governs the substantive issues in this case.

6

Grinnell Mut. Reins. Co. v. Jungling, 654 N.W.2d 530, 536 (Iowa 2002) (citations omitted). An insurance policy must be construed "'as a whole, not by its separate provisions.'" Terra Indus., Inc. v. Nat'l Union Fire Ins. Co., 383 F.3d 754, 756 (8th Cir. 2004) (quoting LeMars Mut. Ins. Co. v. Farm & City Ins. Co., 494 N.W.2d 216, 218 (Iowa 1992)).

The resolution of the parties' summary judgment motions turns on the language of the Policy. Specifically, the issue is whether the March 21, 2002 e-mail constitutes "notice" to National Union per the "Loss Provision" so as to invoke coverage of the Vega lawsuit.

Under a claims-made insurance policy, reporting the claim to the insurer is a critical event because the scope of the insurer's liability depends on the timing of claims. Hasbrouck v. St. Paul Fire & Marine Ins. Co., 511 N.W.2d 364, 368 (Iowa 1993). Promptly reporting claims enables insurers to "more accurately fix its reserves for future liabilities and compute premiums with greater certainty." Id. at 368; accord FDIC v. St. Paul Fire & Marine Ins. Co., 993 F.2d 155, 158 (8th Cir. 1993) ("Notice in a 'claims[-]made' policy provides the insurer with the knowledge that after a certain date the insurer is no longer liable under the policy, and accordingly allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty.").

The provision in the Policy that creates CBE's duty to notify National Union of a claim as a condition precedent for coverage is the "Loss Provision" paragraph, which provides:

> [CBE] shall, as a condition precedent to the availability of the rights provided under this policy, give written notice to [National Union] as soon as practicable of any claim made against [CBE]. Notice given by or on behalf of [CBE] to any authorized representative of [National Union], with particulars sufficient to identify [CBE], shall be deemed notice to [National Union].

7

"[A] condition precedent is one whose performance or occurrence [the insured] must prove in order to recover." Henschel v. Hawkeye-Sec. Ins. Co., 178 N.W.2d 409, 417 (Iowa 1970). Under Iowa law, the insured must prove each condition precedent has been satisfied before the insured can recover. Terra Indus., 383 F.3d at 759 (citing Grinnell Mut. Reins. Co. v. Jungling, 654 N.W.2d 530, 541-42 (Iowa 2002)).

"[A] notice condition in an insurance contract is one of the basic and essential provisions of the contract and is of the essence of the agreement." Met-Coil Sys., 524 N.W.2d at 655 (citing Henderson v. Hawkeye-Sec. Ins. Co., 106 N.W.2d 86, 92 (Iowa 1960)). "'[C]laims[-]made' policies place special reliance on notice." St. Paul Fire & Marine, 993 F.2d at 158. "In fact, the notice provision of a 'claims made' policy is just as important to coverage as the requirement that the claim be asserted during the policy period." Id. The purpose of the notice provision is to "[ensure] promptness of notice, maximizing the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured." 8 Russ & Segalla, Couch on Insurance, § 186.13. Accordingly, "[c]ourts strictly construe notice requirements in claim-made policies," 22 Holmes, Appleman on Insurance Law and Practice § 139.8, and the insured accepts the risk of failing to provide timely notice, see St. Paul Fire & Marine, 993 F.2d at 158.

National Union argues that claims-made policies require that formal notice be given during the period of coverage, in order for there to be coverage. National Union characterizes the March 21, 2002 e-mail as an express "non-notice." CBE asserts the March 21 and 22, 2002 emails constitute notice pursuant to the Loss Provision paragraph because the Policy only requires notice "with particulars sufficient to identify [CBE.]" National Union replies that the March 21 and 22, 2002 emails do not constitute notice because the March 21 email stated: "[CBE is] planning on handling these [lawsuits] without putting you on notice. . . ." National Union further argues that CBE knew how

to give the proper, formal notice contemplated by the Policy as CBE had done so on two prior occasions.

The court finds that the March 21 email constitutes notice for purposes of the Loss Provision paragraph. The Policy only requires "written notice . . . as soon as practicable of any claim . . . with particulars sufficient to identify the Insured." The email was sent three days after CBE was served the Vega lawsuit and expressly identified CBE as the insured. National Union does not argue that an email does not constitute "written notice." The notice contemplated by the Policy has been satisfied. The fact that PDCM (on behalf of CBE) also notified National Union that CBE planned on handling the claim "without putting [National Union] on notice" does not change the fact that National Union received actual notice of the Vega lawsuit. Rather, given the $10,000 deductible in the Policy, CBE's decision to handle the claim itself, while using counsel "approved for [National Union]'s product line" not only makes sense, but is required by the terms of the Policy. The court is not convinced that CBE was requesting or that National Union merely was doing CBE a "favor" by proving contact information for National Union approved counsel. Had National Union required the more "formal" notice it claims is required in "claims-made" policies, it could and should have included such a provision in the Policy. See Hasbrouck, 511 N.W.2d at 368 (requiring the following information to make a claim per the terms of the policy: the date, time and place of the incident, what happened and what professional service you performed, the type of claim you anticipate, the name and address of the injured party, and the name and address of any witnesses); Met-Coil Sys. Corp., 524 N.W.2d at 655 (noting that the "notice of suit" provision in the policy required that the insured "immediately forward to the Company every demand, notice, summons or other process received by him or his representative"). It is the language of the policy which governs, and CBE satisfied the notice provision with the March 21, 2002 email.

## VI. CONCLUSION

As set forth above, the court finds that the undisputed material facts demonstrate that CBE provided National Union notice of the Vega lawsuit in accordance with the terms of the Policy. CBE's motion for summary judgment is granted. National Union's motion for summary judgment is denied. A telephonic status conference will be held in this matter on Monday, March 13, 2006, at 4:00 p.m. (the court will initiate the call), after which judgments will be entered.

March 10, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT